UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JOSEPH J. SHELTON, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 22-3333 (RC) |
| | : | | |
| v. | : | Re Document No.: | 20 |
| | : | | |
| DISTRICT COOLING, LLC, | : | | |
| | : | | |
| Defendant. | : | | |

MEMORANDUM OPINION

Granting Plaintiff's Motion for Default Judgment

## I. INTRODUCTION

Plaintiff Joseph J. Shelton, as Chief Executive Officer of the Central Pension Fund of the International Union of Operating Engineers and Participating Employers ("Central Pension Fund" or "the Fund"), brings this action against Defendant District Cooling, LLC, under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a) & 1145. Before the Court is Plaintiff's motion for default judgment, asking the Court to enter judgment in the amount of $120,914.29. For the reasons discussed below, the motion will be granted and a default judgment entered in favor of the Central Pension Fund and against District Cooling.

## II. BACKGROUND

### A. Factual Background

The Central Pension Fund is a multiemployer employee benefit plan as those terms are defined in Sections 3(3) and 3(37) of ERISA, 29 U.S.C. §§ 1002(3), (37). Compl. ¶ 1, ECF No. 1. The Fund "was established and is maintained in accordance with its Restated Agreement and Declaration of Trust." *Id*. Pursuant to collective bargaining agreements ("CBAs") with the International Union of Operating Engineers Local 99-99A, Defendant "agreed to pay certain

sums of money in the form of monthly contributions to the [Central Pension Fund] for each hour worked by employees of the defendant performing work covered by the [CBAs]." *Id.* ¶¶ 6–7. In the event Defendant "fails to pay required contributions," Defendant "is liable for liquidated damages in the amount of 20% of the total contributions owed," "interest at the rate of 9% per annum," and "all attorneys' fees and costs." *Id.* ¶¶ 12–14.[1]

Defendant self-reported the number of hours worked by its employees using documents known as "Remittance Reports." Pl.'s Mem. in Supp. of Mot. for Entry of J. by Default ("Pl.'s Mot.") at 3, ECF No. 20-1; *see also* Decl. of Joseph J. Shelton ("Shelton Decl.") ¶ 7, ECF No. 20-3. The Central Pension Fund alleges that, for certain months within the period from September 2019 through June 2021, Defendant reported but did not pay the amounts it owed to the Fund. Compl. ¶¶ 17–18. Additionally, the Fund alleges that Defendant "failed to comply with its contractual duty to submit remittance reports and contributions" during the period from July 2021 through May 2022. *Id.* ¶ 23.

## B.  Procedural Background

Plaintiff filed the instant lawsuit on October 31, 2022. Plaintiff's complaint seeks to collect unpaid contributions, interest, liquidated damages, and attorneys' fees and costs. On January 11, 2023, Plaintiff served Defendant with a copy of the complaint. Aff. of Service, ECF No. 3. After Defendant failed to file an answer or otherwise respond, Plaintiff requested that the Clerk of the Court enter a default against Defendant. Req. for Clerk's Entry of Default, ECF No. 5. The Clerk declared Defendant in default on March 15, 2023. Default, ECF No. 6; *see also* Fed. R. Civ. P. 55(a). Plaintiff now moves for entry of default judgment pursuant to Federal

---

[1] Plaintiff is "a designated fiduciary in accordance with the Central Pension Fund's Restated Agreement and Declaration of Trust and as defined in Section 3(21) of ERISA, 29 U.S.C. § 1002(21)." Compl. ¶ 1.

Rule of Civil Procedure 55(b)(2).[2]  To date, Defendant has still failed to answer or otherwise defend this action.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 55(a) provides that the Clerk of the Court must enter a party's default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise."  Fed. R. Civ. P. 55(a).  After a default has been entered, a court may enter a default judgment order pursuant to Rule 55(b).  Fed. R. Civ. P. 55(b).  The trial court has discretion to decide whether default judgment is appropriate.  *Keegel v. Key W. & Caribbean Trading Co.*, 627 F.2d 372, 375 n.5 (D.C. Cir. 1980); *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980).  Upon entry of default by the Clerk of the Court, the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint."  *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002).

"Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain." *Fanning v. C & L Serv. Corp.*, 297 F.R.D. 162, 166 (D.D.C. 2013) (internal quotation and citation omitted).  "Accordingly, when moving for a default judgment, the plaintiff must prove its entitlement to the amount of monetary damages requested."  *Fanning v. Permanent Sol. Indus.*, 257 F.R.D. 4, 7 (D.D.C. 2009).  "In ruling on such a motion, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default

---

[2] Federal Rule of Civil Procedure 55 specifies a two-step process for a party seeking to obtain a default judgment.  First, the plaintiff must request that the Clerk of the Court enter a default against the party who has "failed to plead or otherwise defend" against an action.  Fed. R. Civ. P. 55(a).  Second, if the plaintiff's claim is not for a "sum certain," the party must apply to the court for an entry of default judgment.  Fed. R. Civ. P. 55(b)(1–2).

3

judgment." *Id.* (quoting *R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 30 (D.D.C. 2002)). The court may also conduct a hearing regarding the scope of damages, Fed. R. Civ. P. 55(b)(2), but it is not required to do so "as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment," *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 67 (D.D.C. 2011) (quoting *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)).

A court granting default judgment against a defendant covered by ERISA for failure to pay contributions owed under a collective bargaining agreement must award: (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; (4) reasonable attorneys' fees and costs; and (5) any other legal or equitable relief it deems appropriate. 29 U.S.C § 1132(g)(2); *see also Bricklayers & Trowel Trades Int'l Pension Fund v. Conn. Stone Indus., LLC*, 318 F. Supp. 3d 328, 332 (D.D.C. 2018), *order vacated in part on other grounds*, No. 17-cv-2341, 2018 WL 6426476 (D.D.C. Sept. 27, 2018). "The unpaid contributions, interest, and liquidated damages generally are considered 'sums certain' pursuant to the calculations mandated in ERISA and the parties' agreements." *R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 31 (quoting *Combs v. Coal & Mineral Mgmt. Servs. Inc.*, 105 F.R.D. 472, 474 (D.D.C. 1984)).

### IV.  ANALYSIS

The Court must first determine whether entry of default judgment is appropriate. If it is, the Court must then determine the appropriate damages award.

### A.  Liability

Default judgment is warranted because Plaintiff's complaint adequately pleads a violation of ERISA and Defendant has failed to defend this case. "ERISA requires employers to make

contributions to multiemployer plans 'in accordance with the terms and conditions of' the relevant collective-bargaining agreements." *Boland v. Smith & Rogers Constr. Ltd.*, 201 F. Supp. 3d 144, 147–48 (D.D.C. 2016).  Plaintiff's complaint sufficiently pleads (and his motion attaches evidence) that Defendant was so obligated and has failed to make the requisite contributions.  Compl. ¶¶ 6–11; *see also* Ex. B to Shelton Decl., ECF No. 20-3.  Therefore, Plaintiff's well-pleaded allegations, which the Court accepts as true because Defendant is in default, *see, e.g.*, *Fanning v. AMF Mech. Corp.*, 326 F.R.D. 11, 14 (D.D.C. 2018), make out a violation of 29 U.S.C. § 1145.  And Defendant has "fail[ed] to defend [this] case appropriately." *Elite Terrazzo Flooring*, 763 F. Supp. 2d at 66.  Defendant was served with process in January 2023, yet has utterly failed to respond.  For all these reasons, the Court therefore concludes that entry of default judgment against Defendant is appropriate.

### B.  Damages

#### 1.  Reported Months

The Court must next make an independent determination as to the sum to be awarded in the judgment.  *See Smith & Rogers Constr.*, 201 F. Supp. 3d at 148.  Under ERISA, "[e]very employer who is obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of . . . such agreement."  29 U.S.C. § 1145.  Pursuant to the relevant CBAs, Defendant was obligated to submit monthly remittance reports to the Fund that indicated the contributions it owed, and then to pay those contributions. Compl. ¶ 8; Shelton Decl. ¶ 7; *see also* Restated Agreement and Declaration of Trust ("Restated Agreement"), Ex. A to Shelton Decl., ECF No. 20-3.  For the months of September 2019 through January 2020; June 2020; and August 2020 through 2021, Defendant submitted monthly

remittance reports to the Fund but it did not pay the entirety of the contributions owed. Pl.'s Mot. at 5–6; *see also* Shelton Decl. ¶ 12; Ex. D to Shelton Decl., ECF No. 20-3; Compl. ¶ 17. Because the sums owed can be precisely calculated based on the reports submitted for these months, the Court will order Defendant to pay the amounts specified in the declaration of Joseph Shelton, the CEO of the Central Pension Fund. *See* Shelton Decl. ¶¶ 2, 12. He avers that "[a]ccording to [the] Remittance Reports, and after accounting for the partial contribution payments submitted therewith, discrepancy payments subsequently received from the Defendant, and applying any overpayment credits to the Defendant's account, the delinquent contributions reported, but unpaid, by the Defendant total $27,061.00 for work performed during the months September 2019 through January 2020, June 2020, and August 2020 through June 2021." Shelton Decl. ¶ 12; *see also* Compl. ¶ 17; Pl.'s Mot. at 5–6.[3] Accordingly, Plaintiff is awarded a total of $27,061.00 for the unpaid, reported amounts owed by Defendant.

2.  Unreported Months

As of December 2023, Defendant had not submitted remittance reports for the months of July 2021 through May 2022. Shelton Decl. ¶ 15; Pl.'s Mot. at 6; *see also* Compl. ¶ 11 (alleging failure to submit remittance reports for July 2021 through May 2022). Defendant was also required to make contributions during those months, and they remain unpaid. Pl's Mot. at 6; *see also* Shelton Decl. ¶ 10; Compl. ¶ 25.

Plaintiff has provided the Court with the affidavit of Mr. Shelton to support a damages award for these unpaid months as well. Plaintiff has calculated that Defendant owes $63,536.00 to the Fund for the unpaid contributions for the period running from July 2021 through May

---

[3] Based on the figures provided in the Discrepancy Report, *see* Ex. D to Shelton Decl., the Court agrees that the total amount owed for those months is $27,061.00.

2022. Pl's Mot. at 6–7; *see also* Shelton Decl. ¶¶ 16–17. In the absence of the necessary reports, the Fund estimated the unpaid contributions due by calculating the average of the three previous months for which reports were submitted and multiplying that amount by eleven months. *See* Shelton Decl. ¶¶ 16–17. The Court accepts this calculation as a reasonable estimate of the unpaid contributions. *See, e.g.*, *Int'l Painters & Allied Trades Indus. Pension Fund v. LaSalle Glass & Mirror Co.*, 267 F.R.D. 430, 434 (D.D.C. 2010) (approving plaintiffs' estimate of damages based on an average of unpaid contributions reported in the previous three months); *Conn. Stone Indus.*, 318 F. Supp. 3d at 334 (same but based on previous five months); *Int'l Painters & Allied Trades Indus. Pension Fund v. Advanced Pro Painting Servs.*, 697 F. Supp. 2d 112, 116–17 (D.D.C. 2010) (same but based on previous two months); *see also Nat'l Shopmen Pension Fund v. Builders Metal Supply, Inc.*, 304 F.R.D. 47, 50 (D.D.C. 2014) (approving plaintiffs' estimate of damages based on the highest amount of hours reported in any month during the preceding twelve month period multiplied by the applicable contribution rate). Plaintiff is thus entitled to $63,536.00 in payments for the months for which Defendant failed to submit remittance reports.

### 3. Interest and Liquidated Damages

In addition to delinquent payments, under ERISA and the relevant agreements in this case, the Fund is entitled to interest at a rate of nine percent per annum from the due date of each monthly payment. *See* 29 U.S.C. § 1132(g)(2)(B); Pl.'s Mot. at 7–8; Compl. ¶ 13; Restated Agreement at 13. The Fund is also entitled to an additional amount equal to the greater of interest on the unpaid contributions or liquidated damages at a rate of twenty percent of the total contributions owed. *See* 29 U.S.C. § 1132(g)(2)(C); *see also Conn. Stone Indus.*, 318 F. Supp.

3d at 333. The Fund, however, only seeks liquidated damages "at the reduced rate of fifteen percent." Pl.'s Mem at 8; Shelton Decl. ¶¶ 10, 14, 19.

Plaintiff has calculated the interest owed on delinquent payments—both reported and unreported—and documented those calculations in Exhibit C. *See* Ex. C to Shelton Decl., ECF No. 20-3. Mr. Shelton avers that the calculations are correct and, given that Defendant has not contested them, the Court will accept his calculations of simple interest at a rate of nine percent per annum. *See Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. M.R. of Amboy, LLC*, No. 19-cv-1405, 2019 WL 6498867, at *3 (D.D.C. Dec. 3, 2019) (approving interest based on declarations which "set forth the plaintiffs' calculations with specificity"). By the same logic, the Court will accept Mr. Shelton's calculations concerning liquidated damages at a rate of 15%. *See id.* Accordingly, the Court concludes that Defendant owes interest on the unpaid amounts through March 15, 2023 in the amount of $13,038.74, and that it owes liquidated damages in the amount of $13,589.55. *See* Pl.'s Mot. at 7–9; Shelton Decl. ¶¶ 10, 13–14, 18–19.

4. Attorneys' Fees and Costs

The Fund has also requested that the Court order Defendant to pay $2,937.00 in attorneys' fees and $752.00 for costs associated with this case. Pl.'s Mot. at 9–10. ERISA provides that in an action to recover contributions pursuant to a collective bargaining agreement, "the court shall award the plan . . . reasonable attorney's fees and costs" if the plan receives judgment in its favor. 29 U.S.C. § 1132(g)(2)(D); *see also Conn. Stone Indus.*, 318 F. Supp. 3d at 334.

"The reasonableness of the fees requested . . . is a 'judgment call' which only the Court can make." *Combs*, 105 F.R.D. at 475. Reasonable attorneys' fees are "calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly

rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *see Bd. of Trs. of Hotel & Rest. Emps. Loc. 25 v. JPR, Inc.*, 136 F.3d 794, 801 (D.C. Cir. 1998) (applying this standard in calculating attorneys' fees under ERISA).  When preparing a fee application, a plaintiff "must provide the Court with 'sufficiently detailed information about the hours logged and the work done' 'based on contemporaneous time records' in order to justify the hours expended." *Conn. Stone Indus.*, 318 F. Supp. 3d at 334–35 (quoting *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)).  "And the reasonableness of the hourly rate is determined by referencing the 'prevailing market rates in the relevant community' and producing 'satisfactory evidence . . . that the requested rates are in line with those prevailing in the community.'" *Id.* at 335 (quoting *Blum*, 465 U.S. at 895 n.11).

Here, the Fund offers the declaration of its counsel, Charles W. Gilligan, to establish the amount of fees and costs owed in this case.  *See generally* Decl. of Att'ys' Fees and Legal Costs ("Gilligan Decl."), ECF No. 20-3.  The declaration attaches documentation outlining the 8.9 hours allocated to this case by Mr. Gilligan and one other attorney (Daniel Keenan), and it states that the attorneys billed their time at $330.00 per hour.  *See* Ex. A to Gilligan Decl., ECF No. 20-3.  Mr. Gilligan avers that he has been a partner with the law firm of O'Donoghue & O'Donoghue LLP since 1993; that Mr. Keenan has been practicing labor and employee benefits law since 2016; and that his firm has "negotiated a fee of $330.00 per hour . . . for attorney time with its client for the performance of this type of legal representation."  Gilligan Decl. ¶¶ 1–2, 5.  Mr. Gilligan further attests that a rate of $330.00 per hour is "below the usual and customary fee charged for this type of work" and that the rate is also "substantially below" the relevant rates established by the so-called *Laffey* Matrix (which shows that the applicable hourly rates for Mr. Gilligan and Mr. Keenan would be $914.00 and $465.00, respectively).  *Id.* ¶ 5.  The rate is also

lower than hourly rates that courts have approved in other, similar cases. *See, e.g.*, *Smith & Rogers Constr.*, 201 F. Supp. 3d at 149 (approving $615 hourly rate for experienced attorney in an ERISA default case for work performed in 2015 and 2016).

All told, the Court finds that Plaintiff has submitted sufficiently detailed documentary evidence outlining the work done and hours billed, and it further concludes that Plaintiff's request for attorneys' fees is reasonable. *See Conn. Stone Indus.*, 318 F. Supp. 3d at 334–35; *Smith & Rogers Constr.*, 201 F. Supp. 3d at 149. It therefore awards Plaintiff $2,937.00 in attorneys' fees.

Finally, the Fund seeks legal costs in the amount of $350.00 incurred for service of process and $402.00 incurred to file the complaint in this case. Pl.'s Mot. at 10; *see also* Gilligan Decl. ¶¶ 6–7. Based on the documentary evidence provided, which shows that the Fund did incur these costs, *see* Exs. B, C to Gilligan Decl., ECF No. 20-3, the Court will award the Fund its costs totaling $752.00.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Entry of Judgment by Default and to Close Case (ECF No. 20) is **GRANTED**. It is hereby **ORDERED** that Defendant shall immediately pay $120,914.29 to the Central Pension Fund of the International Union of Operating Engineers and Participating Employers. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated: September 6, 2024                                      RUDOLPH CONTRERAS
                                                              United States District Judge